UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL L. HARRIS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )   CAUSE NO. 3:06-CV-041 PS |
| | ) |
| INDIANA PAROLE BOARD, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

This matter is before the Court on a habeas corpus petition brought pursuant to 28 U.S.C. § 2254 challenging the conditions and revocation of the petitioner's state parole. The procedural history is convoluted but a full description of it is necessary to adequately address the matters raised.

Petitioner Michael L. Harris, a *pro se* prisoner, was convicted in 1999 in an Indiana state court of molesting a ten year old boy and was sentenced to ten years imprisonment. He was released early and placed on parole with certain conditions including that he stay off the Internet, that he not use his employment as a means to acquire new victims and that he maintain only one residence. While on parole, Harris began working as a "casting director" for Michael Harris Film Productions, a company that he had set up before he was originally incarcerated. *See Harris v. State*, 836 N.E.2d 267, 270 (Ind. Ct. App. 2005). Part of his job was to develop local actors between the ages of 6 and 18, and Harris used the Internet in this process. *Id*. at 270-71. This conduct got him in hot water with the parole board, and a notice of parole violations was filed. After a hearing before the parole board, Harris was found to have violated the conditions of his parole, and on October 3, 2003 his parole was revoked.

Harris challenged the decision of the parole board in a petition for post conviction relief (PCR) in state court and it was denied by the trial court. Harris appealed that denial, and on May 13, 2005 – while his case was pending decision in the Indiana Court of Appeals – Harris was paroled a second time. The case proceeded nonetheless, and on October 18, 2005, the Court of Appeals of Indiana denied Harris' appeal from the denial of his PCR and the Indiana Supreme Court denied transfer. *Harris*, 836 N.E.2d 267-269.

On January 17, 2006, Harris filed a Petition for a Writ of Habeas Corpus in this court challenging the Indiana court's denial of his state PCR petition. Then, while his petition was pending in this Court, Harris had his parole revoked a second time. Although the record is scant on this point, evidently Harris again used the Internet in violation of his parole terms. The exact status of the second parole revocation is not clear from the record before the Court. On August 7, 2006, Harris filed a document entitled Motion to Inform and Request for Injunctive Relief. The purpose of the motion was to inform the Court of his second revocation. It is unclear at this time whether the parole hearing has taken place and, if it has, whether Harris has filed a second state PCR petition addressing the new revocation. Ordinarily, only the judgment of one court can be challenged in a habeas corpus petition. *See* Section 2254 Habeas Corpus Rule 2(e). Because of this, and because Harris has not exhausted any claims he might have with regards to the second revocation, our focus is on the first revocation hearing and whether the Indiana Court of Appeals was correct in its decision of October 18, 2005.

A petition for writ of habeas corpus is the appropriate mechanism to challenge the revocation or conditions of parole:

> For parolees, the [difference between a civil rights action and a collateral attack] is more metaphysical, because the "conditions" of parole are the confinement.

2

> Requirements that parolees stay in touch with their parole officer, hold down a job, steer clear of criminals, or obtain permission for any proposed travel outside the jurisdiction, are what distinguish parole from freedom. It is because of these restrictions that parolees remain "in custody" on their unexpired sentences and thus may initiate a collateral attack while on parole.

*Williams v. Wisconsin*, 336 F.3d 576, 579-580 (7th Cir. 2003).

Mr. Harris raises four grounds in his challenge: 1) that his parole should not have been revoked on October 3, 2003 because the Parole Board committed various due process violations at his revocation hearing; 2) that the Parole Board violated state law requiring that parole conditions be not unduly restrictive of fundamental rights and be reasonably related to the goal of reintegration into the community; 3) that the conditions of his parole were unconstitutional; and 4) that the 2003 revocation unconstitutionally deprived him of credit time earned. We address these arguments in turn.

**A. Due Process Challenge to 2003 Revocation**

Mr. Harris asserts the Parole Board violated his First Amendment rights by using his proposed screenplay on child molesting and his activities on the Internet as evidence that he was not complying with the terms of his parole. Furthermore, Mr. Harris alleges that the Parole Board allowed *ex parte* communications, which violated his right to confront the witnesses. As a result, Mr. Harris seeks release from confinement and parole. As mentioned, on May 13, 2005, Mr. Harris was once again released on parole.

The Parole Board argues that Mr. Harris' petition is moot with regards to this issue since Mr. Harris was released on parole a second time and the length of his confinement has not been extended. The Court agrees. It is true that ordinarily a habeas petitioner's release from prison after his petition has already been filed does not automatically moot the petition on the theory

3

that it no longer satisfies the "in custody" requirement of the federal habeas statute. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  However, if the petitioner's subsequent release means that the plaintiff's alleged injury is no longer "likely to be redressed by a favorable judicial decision," that will cause the petition to be moot because it no longer presents a case or controversy under Article III, § 2 of the Constitution. *Id.*; *see also Phifer v. Clark*, 115 F.3d 496, 500 (7th Cir. 1997) ("If . . . [petitioner] is suffering no adverse consequences from the Parole Commission's finding, his petition would be moot.").

Most Indiana prisoners are subject to a provision of Indiana law that mandates that they be discharged from parole within 24 months, as long as parole is not revoked.  Ind. Code § 35-50-6-1(b) (general provision stating that, unless parole is revoked, parolees can only be released on parole for a period of twenty-four months or until the person's fixed term expires, whichever term is shorter); *see also* Ind. Code § 35-50-6-1(c) ("A person whose parole is revoked shall be imprisoned for all or part of the remainder of the person's fixed term.").  For those prisoners, an improper revocation of parole means losing the ability to be released within 24 months.  *See e.g. White v. Indiana Parole Board*, 266 F.3d 759, 762-63 (7th Cir. 2001).

But sex offenders are exempted from the provision that requires release of compliant parolees within 24 months.  Ind. Code § 35-50-6-1(d).  Under that section of the Indiana Code, when a sex offender completes his fixed term of imprisonment, less credit time earned with respect to that term, the sex offender shall be placed on parole for not more than ten (10) years (as contrasted to the two-year maximum for other offenders).  Therefore, Harris was going to be "in custody" by being either on parole or incarcerated for ten years no matter what the Parole

4

Board did.  Even if Mr. Harris' parole had not been revoked on October 3, 2003, he would be "in custody" for exactly the same length of time as he is now.

Mr. Harris is no longer suffering an adverse consequence from the alleged due process violations at his first parole revocation hearing because he was released to parole a second time. Moreover, the length of time in which he will be on parole was not extended because, as mentioned, he is designated as sex offender and his parole is governed by Ind. Code § 35-50-6-1(d), not Ind. Code § 35-50-6-1(b).  Thus, any due process violation that may have occurred at his initial parole revocation hearing no longer impacts him.  As a result, his petition is moot with regards to any alleged due process violations that took place at the initial parole revocation hearing.[1]

**B.  Challenges to the Validity of Parole Conditions**.

While his petition with regards to the revocation of his parole is moot, in his second and third arguments, Mr. Harris attempts to challenge the conditions of his parole.  These claims are not mooted by Harris' subsequent re-release on parole, because the parole conditions are ongoing at least until Harris' fixed term ends.

In its response, the Parole Board asserts that Mr. Harris is only challenging the revocation of his parole and not the actual conditions of his parole.  This argument is frivolous. It is apparent that Mr. Harris has challenged, and the state courts have addressed, the conditions of his parole in this proceeding as well as in the state court proceedings. (*See, e.g.*, docket no. 7 (traverse); docket no. 7-2 at 8-9 (petition for post-conviction relief); docket no. 7-3 at 5, 8

---

[1] In any event, even if the petition was not moot, it is clear that the Indiana Court of Appeals did not unreasonably apply clearly established federal law in determining that Harris' parole revocation hearing complied with the dictates of due process. *See Harris*, 836 N.E.2d at 279-281. That, of course, is the standard that governs our review.  28 U.S.C. 2254(d).

(1/25/05 Order of Koscuisko County Superior Court); docket nos. 7-4 at 14-20 and 7-5 at 1-17 (Harris' Appellate Brief before the Indiana Court of Appeals) and docket no. 7-7 at 15 (10/18/05 Order of Indiana Court of Appeals)).  The court does not have before it Mr. Harris' petition to transfer to the Indiana Supreme Court, because the respondent did not submit the full and complete record as ordered.  Because of the respondent's failure to comply with the court's order, and since Harris did challenge the constitutionality of the conditions at the other state court proceedings, the court will assume that Mr. Harris also challenged the conditions in his petition to transfer.

Indeed, even Harris' reincarceration, the details of which are not in the record, would not moot these claims, because Harris will still be subject to the same conditions upon his next release.  Moreover, even if his reincarceration could be considered to moot the claims because he is not currently subject to the special conditions, we conclude that these circumstances fall within the "capable of repetition, yet evading review" exception to mootness doctrine.  *Cf. Spencer*, 523 U.S. at 17-18 (petitioner's claims did not fall with the "capable of repetition, yet evading review" exception, where petitioner had been re-released and his terms of imprisonment had expired; petitioner had not shown that the time between parole revocation and the expiration of his sentence was too short to evade review, or that there was a "reasonable likelihood that he [would] once again be paroled and have that parole revoked").  Unlike in *Spencer*, we find here that 1) the challenged conditions were in place for too short a duration (in between periods of incarceration) to be fully litigated prior to cessation or expiration, and 2) that Harris has shown to a certainty that parole will be, and has been, revoked.  Therefore, the court moves to the merits of those claims.

6

Mr. Harris' first argument as it relates to the legality of his parole conditions can be dispatched swiftly. He asserts that the conditions of his parole violate IND. CODE 11-13-3-4 and IND. CODE 4-22-2-19.5. In a federal habeas corpus petition, the court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A violation of the Indiana Code is not a violation of a federal constitutional right. Therefore, it is not actionable in this habeas corpus proceeding.

Mr. Harris next challenges the following three conditions of his parole as alleged violations of the U.S. Constitution[2]:

> Special Condition 3: You shall not use any computer with access to any "on-line computer service" at any location (including place of employment) without the prior approval of your parole agent. This includes any Internet service provider, bulletin board system, e-mail system or any other public or private computer network.
>
> Special Condition 12: You shall not use your employment as a means to acquire new victims. Your parole agent may contact your employer at any time, You will not work in certain occupations that involve being in the private residences of others, such as, but no limited to: door-to-door sales, soliciting, or delivery. Your parole agent must first approve any employment that you do engage in.
>
> Standard Condition 3: ...You shall have only one residence and one mailing address at a time.

(docket 1-6 at 16-18).

First, Mr. Harris alleges that the conditions are vague. Applying general constitutional principles, a parole condition is vague if it does not define an offense with sufficient clarity to allow people of ordinary intelligence to understand what conduct is prohibited or if it is so vague as to allow for arbitrary or discriminatory enforcement. *United States v. Turcotte*, 405 F.3d 515,

---

[2] Mr. Harris asserts that four of the conditions are vague. However, the Indiana Court of Appeals has previously determined that the condition involving items that could be construed as enticing to children was vague. Therefore, Mr. Harris has already prevailed on this issue and having done so, it is not properly before the court.

7

531 (7th Cir. 2005) (defining vagueness as it relates to a penal statute). Here, the conditions state with clarity that Mr. Harris is not allowed to use *any* computer that has access to the Internet without obtaining prior approval. Furthermore, he is not allowed to use his employment to attract new victims – in his case any minor. This condition further explains that certain occupations are clearly prohibited. Finally, the last provision is clear that Mr. Harris may only have one residence and one mailing address. Mr. Harris has failed to articulate how any of these provisions lack sufficient clarity to allow a person of ordinary intelligence to understand what conduct is prohibited. These conditions clearly state what conduct is prohibited. Accordingly, these conditions are sufficient to put Mr. Harris on notice as to the prohibited conduct and are not vague.

Next, he alleges that the conditions are overly broad and infringe upon his First Amendment rights. Parolees do not have unfettered constitutional rights. *United States v. Sines*, 303 F.3d 793, 801 (7th Cir. 2002) (holding that a court may impose conditions of supervised release which implicate federal rights so long as those conditions are reasonably related to the ends of rehabilitation and protection of the public from recidivism). The primary purpose behind parole "is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed." *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972).

> To accomplish the purpose of parole, those who are allowed to leave prison early are subjected to specified conditions for the duration of their terms. These conditions restrict their activities substantially beyond the ordinary restrictions imposed by law on an individual citizen. Typically, parolees are forbidden to use liquor or to have associations or correspondence with certain categories of undesirable persons. Typically, also they must seek permission from their parole officers before engaging in specified activities, such as changing employment or

>living quarters, marrying, acquiring or operating a motor vehicle, traveling outside the community, and incurring substantial indebtedness.

*Id*. at 478. The court must examine the conditions to see if they are reasonably related to these goals.

The first condition that Mr. Harris challenges is the prohibition against using any "on-line computer service" at any location without prior approval of the parole agent. Mr. Harris argues that *United States v. Scott*, 316 F.3d 733 (7th Cir. 2003) is applicable to his parole conditions. In *Scott*, the court found that, "because the Internet is a medium of communication, a total restriction rarely could be justified." *Id.* at 737; *see also United States v. Holm*, 326 F.3d 872, 879 (7th Cir. 2003) (condition of supervised release "is also overly broad if construed as a strict ban on Internet access.  [A strict Internet ban] is the early 21st century equivalent of forbidding all telephone calls, or all newspapers. Without more evidence in the record that such a drastic measure is appropriate for [the defendant], it cannot stand.").  But the Seventh Circuit also rejected the defendant's position that the First Amendment prohibits any limitation on Internet access. *Scott*, 316 F.3d at 736 ("Scott wants us to go further and say that limitations on Internet access cannot be justified at all, given . . . the first amendment.  That is not a tenable argument.").   While the court notes that *Scott* and *Holm* discourage strict bans on Internet usage, these cases are not applicable to Mr. Harris' challenge. Both of those cases involved a direct appeal from a federal sentence imposed by a federal judge. Mr. Harris is not challenging a probation condition imposed by a federal judge. Rather, he is challenging a condition of his parole imposed by the state parole board, and subsequently found valid through his post-conviction relief petition. Since the post-conviction relief court found the conditions valid, the court may only overturn them if the state court adjudication –

9

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Even if the restriction upon Harris' Internet use was contrary to the Seventh Circuit's decisions in *Scott* and *Holm* (which it is not, because Harris was, in fact, allowed to use the Internet with his parole officer's permission), it would not violate "clearly established federal law, as determined by the Supreme Court of the United States."  As a result, the court cannot conclude that this condition is overly broad.

The second condition Mr. Harris challenges is the condition that prohibits him from using his employment to acquire new victims. This condition is related to his conviction because he met his last victim through a co-worker. Furthermore, this condition does not prohibit Mr. Harris from obtaining any gainful employment. Rather, due to the nature of his offense, it merely limits Mr. Harris from working in a position where he may be tempted to revisit his prior behaviors. As stated in *Morrissey*, 408 U.S. at 478, it is reasonable to require permission before engaging in certain activities or employment.  So found the Indiana Court of Appeals in this case.  *Harris*, 836 N.E.2d at 276. This decision was not an unreasonable application of clearly established federal law.

The third condition Mr. Harris attempts to challenge is the condition that requires Mr. Harris to have only one residence and one mailing address. Mr. Harris does not articulate how this provision is overly broad, and nor can this court find how this provision might be construed as such. In order to help the parole officers maintain contact and properly monitor Mr. Harris' conduct, he needed to be limited to one residence and mailing address. As a result, this condition

10

is not overly broad.  The Indiana Court of Appeals correctly held that this restriction is not vague and is reasonably related to the Parole Board's interest in supervising Harris and reintegrating him into society.  *Harris*, 836 N.E.2d at 277.

**C. Alleged Denial of Credit Time**

Mr. Harris' final argument is that he was denied his liberty interests in the credit time that he earned.  After applying his mandatory credit time, Mr. Harris was released on parole on November 6, 2002.  Mr. Harris then violated his parole and was subsequently re-incarcerated.  Mr. Harris now demands immediate release from custody, asserting that in light of his credit time, he has served his entire sentence.  This claim has no merit.  In Indiana, the credit time statutes are only applied to determine when felons are eligible for parole.  *Boyd v. Broglin*, 519 N.E.2d 541, 543 (Ind. 1988) (revocation of parole did not deprive parolee of earned credit time; parolee received the benefit of his credit time when he was released after serving only three and a half years of a seven year sentence).  Thus, credit time generally is applied to determine a defendant's release date from prison, but does not reduce the sentence itself.  *Indiana Dept. of Corr. v. Bogus,* 754 N.E.2d 27, 31 (Ind. Ct. App. 2001) ("[C]redit time must be interpreted merely as a means to obtain an early release to parole, or the concept of parole would be rendered meaningless."). The Parole Board did not deprive Mr. Harris of his credit time by revoking his parole. Mr. Harris had the benefit of his credit time when he was released on parole in the first place.  His credit time did not reduce his actual sentence. As a result, Mr. Harris was not deprived of a liberty interest.  *See Harris*, 836 N.E.2d at 282.

11

## CONCLUSION

Mr. Harris also filed a motion for a fast and speedy hearing. This motion is denied as moot.

For the foregoing reasons, the court:

(1) **DENIES** Mr. Harris' petition for writ of habeas corpus; and

(2) **DENIES AS MOOT** Mr. Harris's motion for a fast and speedy hearing (docket 12).

**SO ORDERED**.

ENTERED: June 4, 2007

s/ Philip P. Simon<br>
PHILIP P. SIMON, JUDGE<br>
UNITED STATES DISTRICT COURT